Ron, third case on the docket is 2-16-0881, people of the state of Illinois, President Pat Lee v. Carlos T. Jones, Defendant Appellant. Arguing on behalf of the Defendant Appellant is Ann M. Fick. Arguing on behalf of President Pat Lee is Victoria T. Joseph. Ms. Fick. Good morning, Your Honors. My name is Ann Fick. I am from the Office of the State Appellant Defender and I represent the Defendant Appellant, Carlos Jones. May it please the Court. Your Honors requested that counsel be prepared to discuss the implications, if any, of the ruling in U.S. v. Davis as it relates to the constitutionality argument made here regarding the Fire Enhancement Statute, so I will address that first. Davis does recognize how vague laws contravene due process and reasserts the necessity of providing proper notice to defendants, also warns how employing the canon of constitutional avoidance can sometimes run afoul of the rule of lenity. However, the facts in Davis are simply too different from this case to significantly impact the argument here. Unlike this case, Davis and Davis all agree that the firearm enhancement was unconstitutional as it was written. Do we need to reach the constitutional argument in light of the fact that the defendant would have been eligible for natural life under the capital sentencing scheme, that the murder was committed during the course of another felony, therefore he was eligible for natural life? Do you understand the point? We should not reach constitutional questions unless necessary. The defendant was eligible for a natural life sentence based upon the murder during the course of another felony, even if he was not the shooter. Do you agree? In this situation, the base sentence is unknown. I'm sorry, the what is unknown? The base sentence from the underlying base sentence is unknown. And the firearm enhancement, as far as what it was within that range, is also unknown. So it makes it difficult for a reviewing court to adequately evaluate the factors. The impact it may have had on the court. So as it applies to this, the constitutional enhancement or firearm enhancement, the argument remains that it is too broad. In Davis, the question was when to apply that to the statute. And here it's how to apply it. And, again, the argument is that the 25 to life is too broad and the penalty is too severe to have it be left to the whims of the private conceptions of a trial fact. Now, you have the first appellate, Brown, Sharp, Butler, all finding that the statute is not constitutionally vague. Isn't that the way Illinois goes then? Those cases, I acknowledge that those cases do hold that. But they also hold that confusion would be avoided if the legislature provided better guidance. They acknowledge that there was confusion. And then the confusion, in the defense's opinion, is the same as ambiguity. If your honors have no other questions on Davis, I'd like to move on to the more pressing issue in this case. And that is that Mr. Carlos Jones did not kill Mr. Studer. There are significant evidentiary problems here. First and foremost, Carlos was never identified as being at the sitco on May 23, 2012, let alone being the person who pulled the trigger. He was never identified in a lineup. He was never identified in court. And, in fact, the witnesses were never even asked to make an in-court identification of the shooter. Teresa Johnson had the best opportunity to view the shooter, and she said that it was Kenneth McGee. She had an unobstructed view of him. He stood very close to her. Her window was rolled down. She had a conversation with him. And she had the presence of mind to stop and study the face of the person she was speaking with. And she specifically testified that she tried to remember as much as she could. Didn't she see both of them outside of her car door? The first time they are outside of the car is when the attempted armed robbery is alleged to have occurred. One was in the back seat. One was in the back seat, and she said that she never turned around. She felt the presence of two people. But she never saw anything, is her testimony. As far as the second time she's approached when this conversation is had, there's only one person there. And she said that she saw someone sort of lurking in the background. Right. And the video shows that the guy in the white lighter color was there at one point. And I think you can glean that the man in the black was in the back. And then the man in black came out and was at the door. So they were both at the side of her window at one point or another, correct? They were. But in the video, it's hard to tell exactly the angle at which the person in the lighter color hoodie is in relation to where she's facing. So whether or not she had a chance to view him at that point, she said she didn't. She said that she never saw anyone. So the only person that actually touched the car was the person in the black hoodie. Right. And whose fingerprints were? That is the defense's position. And that's McGee. In the black hoodie. Yes. Correct. With the fingerprint. Correct. And just to further her identification, in 2015, she wrote down for her own personal recollection, so that she wouldn't be biased by any of the court proceedings she was attending, that she wasn't initially able to identify McGee or Jones in the photos. It wasn't until I saw McGee in court that I recognized him as the one I talked to. So several times she unequivocally stated that it was Mr. McGee. Additionally, she testified consistently about this person's appearance. Three times she said he had a gray or dark gray hoodie. Six times she said that she had the impression he had a gap in his teeth or he had a gap in his teeth. Two times she said that he had tufts of hair coming out from under the hoodie. And two times she said that he had lighter colored black skin. Now, her description of him corresponds to Osmond Garman, who was the only other person that identified anyone at the sitco that night. Mr. Garman identified McGee in a photo lineup. And he also said that, well, he said that the person had an afro, as it would be called. And I believe lighter colored black skin. And that description from both Teresa Johnson and Mr. Garman aligned with the photo that was seen in the photo lineup of Mr. McGee. And Garman also said that the guy in the dark hoodie was the, did he call him brown skin? And he called the guy in the red and white hoodie white skin. Correct. I believe it was darker brown and then lighter brown is the terms that he used. And the guy in the white hoodie said want to get him. Or the light skinned guy said want to get him. And he said the guy in the black hoodie was antsy. That is what I recall the testimony to be. The state admitted in its brief that the objective evidence here doesn't identify the shooter. So then it argues that the court relied on the testimony to draw inferences. But those inferences here were nothing more than mere speculation. And the most prominent one was that based on the video, the court determined that the person in the light colored hoodie was the person that put the fingerprint on that back triangle window. And then determined that that person must have been McGee. But the video is simply not clear enough to show if anyone put their finger on that or at what point. The only person seen touching the car is the person in the black hoodie. One of the problems is you're asking us to disagree with the inferences drawn by the trial court and under the Collins standard. Talk about that. Why the trial court's ultimate determination is against the manifest waiver of the evidence is insufficient. Sure. There's no reasonable fact finder can find the defendant guilty based on this evidence. There's a few reasons. First of all, as far as the evidence, there were evidentiary mistakes made throughout the ruling. And the testimony of the two jailhouse informants, Woodard and Ford, was misused. In fact, the judge said that he would not admit as substantive evidence Woodard's testimony. And yet in his ruling, he commented on how part of it was important because it related to Mr. Jones talking about someone young. So it's contrary to the evidence. The evidence is simply not sufficient. Reasonable people can make unreasonable decisions. There's no question that he said he considered everything. But the evidence simply is not there to support sustaining this conviction. As I mentioned, the judge misconstrued the evidence. And as a few examples, Johnson's testimony he called compelling, but it was probably mistaken because of the stress from the armed robbery. And that negates her testimony that she said she tried to look and tried to remember as much as she could about the person she was talking to. I mentioned William Woodard's testimony that was misused. Again, Kenneth Payne said that he saw McGee and Jones at his sister's apartment in midday. And yet the judge says that Payne wasn't correct about the time. There's no evidence to support that. He other other evidence here. From Payne, mostly does not indicate that Mr. Jones was at the Citgo on that night. He may have been near it. He may have been at someone's apartment, but that does not put him at the scene that night. So the defense position is that Mr. Jones was not there and Kenneth McGee is the shooter. And as a result, this court should reverse his conviction. Let's talk about Ford's testimony. The admissibility. Sure. The defense acknowledges that the grand jury testimony is admissible under the statute. However, here it should bear very little weight because of the leading nature of the questions, not only the leading nature of the questions, but the fact that they were based on the handwritten notes for which Ford could never truly vouch for their accuracy. Well, he testified that his testimony before the grand jury was accurate. It was truthful. He did make those statements. And the questions that were asked of him were generated from the notes that had been recovered, correct? That's correct. However, in light of his other testimony that he couldn't say whether they're accurate or not, it's at best self-contradictory. Did the trial court comment on the reliability of a jailhouse informant? I believe at one point in his ruling he said that he took into account that Ford was there on a forgery case. And even though Ford in his testimony said that he didn't have a case pending when he wrote those notes, that's inaccurate. So the judge did say that he considered that. Well, did he say he was there on a forgery case? Did he cite forgery as a result of his credibility or lack thereof, or did he talk about that because the forgery was he was doing forgery? That's the only reference that it was. It was never really related to his credibility. So the judge said that he would not use those notes as substantive evidence. However, in his ruling, he says basically the opposite. He says, I'm going to consider the notes if it corroborates any testimony. He's going to consider the notes along with the grand jury testimony. He's going to consider only as corroborating evidence as to whether or not this conversation did take place and his truthfulness before he testifies before the court. And then finally, he said that he's going to consider the notes only for corroborating whether or not this conversation took place and what was involved in the conversation. He's using those notes clearly to substantiate the statements made in the grand jury testimony. Additionally, the judge erred by admitting these notes as past recollection recorded. The State conceded there was no firsthand knowledge by Mr. Ford of the underlying events. Yeah, but is it knowledge of the underlying evidence or is it knowledge of the statement that he made? I mean, there's case law that says it doesn't have to be of the murder or of the crime, but the underlying evidence of what they're testifying to, correct? There's also case law that says the opposite. I cited in my reply brief Hastings, which says that the person writing the statement must have observed, not merely heard, about the underlying event. Yeah. I also cited Barker v. Eagle Food Center for the same proposition, in that this Court said that it's critical to have firsthand knowledge of events disclosed in a report. And then I also cited in support Peoples v. Munoz. So while there may be some testimony as far as the conversation, the purpose of the prior consistent statement would be to allow to not have someone bolster the testimony so it kind of runs afoul of that as opposed to just having a conversation with someone. So there was no underlying knowledge of this event. And then the accuracy. Three times Ford said he could not vouch for the accuracy. And as I mentioned earlier, at best, his testimony was self-contradictory. Based on this argument, if the Court does not find otherwise, the defense requests that he be remanded for a new trial. Thank you. Thank you, Ms. Fick. You'll have time for rebuttal. Ms. Joseph. Afternoon, Your Honors. May it please the Court, Counsel? I'm Victoria Joseph, and I represent the people of the State of Illinois. If Your Honors would like me to briefly make a statement of Davis, the State also does not find Davis specifically applicable to the incident case as the biggest concerns in Davis and the case on which it relies uses the analysis with Sessions v. DiMaia, I believe. And they're looking at whether the statute guaranteed that the person had fair notice of the conduct that the statute prescribes and the penalties that would apply to the conduct. And here we have very specific conduct. We have a first-degree murder coupled with the personal discharge of a firearm. So they're looking at the problem with the language and the residual clause of the federal statute, which is dealing with a crime of violence which was undefined, and it would have left too much indeterminacy for the trial court to even determine the threshold level of risk to move on to applying the enhancement there. So here we have a very definitive conduct that is being punished, a policy of why that punishment is there, and the range provided for the four specific types of injury in the statute. So the people maintain that Davis would not alter. Do we need to even address that issue in light of the fact that the defendant was eligible for a natural life because the murder was committed during the course of another felony? He was eligible for a natural life. He was eligible, but what I cannot remember is the count on which he was convicted on, and I believe that may have been intent. Attempt on robbery. Was he convicted of attempt on robbery? He was convicted of attempt on robbery. Okay. The people also note that we had a pending motion challenging the jurisdiction that we maintain. There is no jurisdiction here where the notice of appeal was due on September 9th of 2016, either the notice of appeal or the motion to reconsider a sentence. The motion was not filed until the 13th of September. Was there discussion and permission to file this later? No, Your Honor. The discussion included could we have a status date. The people maintain that that is not the equivalent of asking for an extension by which to file it. But then the court started giving dates and talking about their availability or unavailability and put it over, correct? That is correct. The court was not available September 5th through the 9th, the dates following Liberty Weekend, I believe, but the people maintain that that does not absolve the defendant from timely filing a motion or the notice within the 30-day period. Wouldn't that be punishing the defendant for an error made by the court? The court suggested that the parties return September 13th, and the parties agreed, and the state didn't say anything. The state conceded that point. I mean, if the state was not taking that as a date for the filing of any post-trial motions and that the state was going to hold the defendant to the deadline, is it incumbent upon the state to remind the trial court that that would be past 30 days, Your Honor? I mean, how could you stand here and make that argument when the state stood mute at the time? Because, Your Honor, the defendant was admonished as to the correct time period. That you're setting a date for a status hearing is not correct. Well, when the court said for the filing of any post-sentencing motions or any other motions you may wish to file, that's a specific statement by the trial court that the trial court is extending the time for any post-sentencing motions. And we all know that the court has the authority to extend the time for the filing, which extends the time for the filing of a notice of appeal, correct? It would, Your Honor. It would. So we'd be punishing the defendant for a mistake that the trial court made that the state just let slip by, right? If that is your interpretation of the fact that it's not. Am I correct? Is that a correct interpretation? If the defendant were relying on what the trial court said, would it be fair to punish him for his reliance upon the trial court or defense counsel? I guess the state is looking at the reliance on the defense counsel. Reliance is on the 30-day time limit, which was provided. That you're then setting an additional date outside of that time period did not change the 30-day of the Supreme Court rule. That is what the people maintain. There were no witnesses to testify that they saw the defendant at the station, correct? That is correct, Your Honor. There was no DNA? No. No other witnesses that were called that saw these two individuals together that day? No. Other than Payne. Other than Payne. I'm sorry. No other witnesses. I was assuming that she meant them. No telephone records connected the two individuals? No. No other evidence of any relationship between the two of them, correct? For example, Payne's sister? No, she was not called to testify. No DNA? No DNA. The case boils down to the testimony of the jailhouse informants, basically, correct? To support defendant's presence there? Yes, Your Honor. Because we know McGee was there. The people maintain that based on the surveillance video showing the encounter with McGee was closer and longer. Despite Johnson's protestations, she did not look. Her description matches that of Garmon. Garmon identified that person as being in the lighter-colored outfit, which would not be the same person that approached her the second time, who was in the dark-colored hoodie, and then that person with whom she had a conversation from a further distance. And we do know approximately that the first person at her window was standing directly at her window because you could see a hand on the open door in which the second person with the black hoodie went to hold her up. So that is why that, combined with her professed state of being buzzed and the fact she was just held up, the judge could reject part of her testimony and still accept the rest describing the events that happened to her. But her identification here was more or less conflated between two individuals because the person she was describing is the person that closest matched Garmon's description, which was McGee, and the person in the light-colored hoodie. But so the only descriptions that we have, Ms. Joseph, are a man in a, I think, a white and red hoodie with a certain color skin and a man in a dark-hitting hoodie with a certain color skin. We never have anyone identify them by name. No. No, we don't. We just have them identifying where they ran, direction they ran to after, which was the same location where Payne had seen them earlier in the day. Right. So it's basically, it's really circumstantial. It is circumstantial, Your Honor. And do you, your, of course, the defense doesn't really object to the admission of the statement before the grand jury. And which could be used substantively to support the conviction. As far as, and that is not being challenged. So that was admissible. And the court made findings of credibility as to Ford and his testimony, finding that he didn't believe that he couldn't recall his grand jury testimony. He didn't believe he couldn't recall his notes. And he found that Ford was both evasive and reluctant in his testimony. And these were findings of fact in addition to his other findings as to considerations of his parole status, his bias, and such when he made the actual finding. But as far as his trial testimony goes, there were specific findings here. Basically, you had equivalent to a turncoat witness who was either playing a Cheshire cat or a caterpillar with the court and both parties not answering anything directly. Any time he started to answer as to the accuracy, he'd back up on it. As counsel said, he was self-contradictory. And the judge specifically made the finding of evasiveness and reluctance. And that is why the court did not believe that this was a memory issue. So... So his credibility, the fact that his credibility came down to the trier effect, the jury. To the judge. It was a bench trial. Yes. It came down to the judge in this case, Your Honor. And the judge did proclaim findings there. As far as the handwritten notes being used, even though the court admitted them as a past recollection recorded, they can be affirmed on any basis in the record. And here they are also higher consistent statements because they were an exception to rebut the charge that he was motivated to testify falsely or had a recent fabrication. From opening statement, defense counsel introduced the fact that there were going to be witnesses that should be viewed with extreme caution. And this is on record, pages, reported proceedings 302 to 303. Saying that one, in fact, went to the grand jury. And it's clear that every one of these people wanted something, expected something, would do anything to better their position. So we knew from the opening statements before he was even called to the stand that this was going to be an attack on him. It continued into the cross-examination, talking about him being in jail, which was pretty tough, and you'll do whatever it is to help yourself. And even though Ford denied that there was an agreement for his grand testimony, in the closing argument, defense counsel proceeded to say that he got himself a deal and he got himself to get out of jail. And that is a reason those handwritten notes could be used because they were made on June 22nd. He agreed that they were made about 3 p.m. following the conversation. And he identified these. The grand jury testimony was October 24th, 2012, which is when he entered his guilty plea. So both of them could be used. But, yes, the grand jury testimony alone could be used substantively as evidence in which he identified his involvement in the shooting. That it was not the younger person who fired the gun. It was him. And he did not understand how the police were able to find his black buddy. Are there any other questions for your partners? No. Thank you. Thank you, Your Honors. Ms. Fick, we'll go to you. Thank you, Your Honors. There are two points I specifically want to address, the first one being that these statements from Ford, the handwritten statements, could be considered as a prior consistent statement. The exception to the prior consistent statement, it has to rebut a charge of recent fabrication or motive to testify falsely, and the prior consistent statement must have been made when such a motive did not exist. In this case, there was a motive from the very beginning because Mr. Ford was awaiting disposition on his forgery case. Moreover. But did he, at the time that he made these notes, he had, at what point did he have a discussion with the police officers? It was after. It was the 27th. Right. I believe. And he made the notes when? They're dated the 22nd. The second page is dated the 23rd. I believe there was discussion about there being talk on the 24th, and then at the very bottom there was the date of the 27th, regarding another individual. So looking at those notes in and of themselves, it's clear that there was a motive to testify. He, whoever the notes are being written for, he says, check the phone records for cell 7, check the video for the map division, look at the visitor logs. Those are clear indicators that he was motivated to do this. He was looking for some consideration. Correct. And the other point I wanted to make was, again, regarding the credibility. Let me ask you this. The State never introduced those notes until cross-examination, correct? No. The State introduced those notes on direct. They were not received or considered. Oh, they weren't admitted until after cross. Correct. They weren't admitted. Okay. As to the judge's determination of credibility, he at one point called Ford's testimony clear and concise but evasive. Whether that is a judgment of him being credible is questionable. It's not a clear statement that he was credible. And, again, the evidence in this case is just too insufficient to sustain this charge. The judges, even if he may have given extreme consideration to everything, unfortunately the decision wasn't based on the evidence and it was based on unreasonable inferences. If Your Honors have no other questions, I think you can just ask that the Court revert the connection. Thank you. Thank you. The Court thanks both parties for the quality of your arguments today. The case will be taken under advisement. A written decision will be issued in due course. Thank you.